# UNITED STATES DISTRICT COURT
### for the
## DISTRICT OF KANSAS

| | | |
|---|---|---|
| **HORACE B. EDWARDS,** | ) | |
| **JOHN and JANE DOES 1-10,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.** |
| | ) | |
| **EDWARD JOSEPH SNOWDEN,** | ) | |
| **PRAXIS FILMS, INC., LAURA POITRAS,** | ) | |
| **PARTICIPANT MEDIA, LLC, DIANE** | ) | |
| **WEYERMANN, JEFFREY SKOLL,** | ) | |
| **THE WEINSTEIN COMPANY LLC a/k/a** | ) | |
| **RADIUS-TWC, JOHN and JANE DOES 1-10,** | ) | **COMPLAINT** |
| **Defendants.** | ) | |

## *PRELIMINARY STATEMENT*

1.      This is an action on behalf of the American people to seek prompt imposition of the Supreme Court's essential financial remedy–a constructive trust–to redress unjust enrichment by ensuring that ill-gotten gains are disgorged.[1]  This deters breaches of fiduciary duty, addresses irreparable damage to the safety of the American people and prevents dangerous disruption of foreign affairs due to irresponsible conduct of disloyal government operatives and entertainment industry collaborators, i.e. named Defendants.   This relief does not infringe upon First Amendment rights but maintains a reasonable balance between national security and the fundamental Constitutional protections of Freedom of the Press.  No censorship occurs and no public access is restrained.[2]  Rather, upon information and belief, this lawsuit seeks relief against those who profiteer by pretending to be journalists and whistleblowers, but in effect are evading

---

[1] A constructive trust is an equitable remedy to be tried solely before a judge by a bench trial, not a jury trial, thus obviating any potential unauthorized disclosure of classified information.

[2] Citizenfour is a potential nominee and issues of eligibility have been presented pursuant to the Academy Rules, http://www.oscars.org/ <last visited on December 17, 2014> by Plaintiff's attorney on behalf of the Plaintiff in this case.  See, Exhibit A (with Attachments), and Exhibit B to Academy.  No response thereto has been received to date.

the law and betraying their country.  Upon information and belief, through this charade in the film, "Citizenfour," a fugitive senior intelligence official, e.g. CIA/NSA/DIA, together with the "Hollywood Defendants," intentionally violate obligations owed to the American people, misuse purloined information disclosed to foreign enemies, and covet financial gain for their misconduct.

2.     Plaintiff, Horace B. Edwards, is a former Secretary of the Kansas Department of Transportation, a retired naval officer, LT (j.g.), who held a "Q" security clearance, a former President and Chief Executive Officer of ARCO Pipeline Company and former President of Edwards and Associates, Inc., a professional engineering company.  As a member of the movie-going public who purchased a ticket to Citizenfour and watched the documentary, he was outraged by the admissions of Defendant Edward J. Snowden detailing his government status as a former CIA/NSA/DIA officer with special high level security clearances, proclaiming himself to be above the law, choosing to breach his government secrecy agreement[s] and his loyalty oath to the United States, intentionally cherry-picking extraordinary quantities and categories of highly classified government information and passing the information to Citizenfour film director Defendant Laura Poitras, as well as others.  Plaintiff Edwards views Defendant Snowden's acts as dishonorable and indefensible and not the acts of a legitimate whistleblower. To the contrary, Defendant Snowden engaged in acts of foreign espionage, which the Hollywood Defendants omit from the storyline.

3.     Especially alarming are the on-film admissions against interest of Defendant Poitras, who, upon information and belief, misrepresents herself to be a documentarian but instead, is a central character and actual participant in a scheme to profit from stolen U.S. government property.  For example, Defendant Poitras speaks in first person narrative  about her

role in aiding and abetting Defendant Snowden, hiding him in her hotel room while he changes into light disguise, accepting  all of the purloined information to use for her personal benefit financially and professionally, filming Defendant Snowden's meeting with a lawyer in Hong Kong as he tries to seek asylum, and acknowledging that she has the right to possess and control stolen classified digital information belonging to the U.S. government and to parlay that information into profit for herself and the Hollywood Defendants.

4.      Upon information and belief, Defendant Poitras and her film company, Defendant Praxis Films, Inc., eventually teamed up with executive producers, Defendant Diane Weyermann, Defendant Jeffrey Skoll, and Defendant Participant Media, LLC, as well as the distributor, Defendant The Weinstein Company LLC a/k/a/ Radius-TWC (hereinafter collectively the "Hollywood Defendants") to take the original film footage of Defendant Snowden's Hong Kong admissions and cloak Defendant Snowden's illegal acts in the guise of righteousness and virtue.    Citizenfour portrays Defendant Snowden as a well-meaning whistleblower having nowhere else to turn, while the Hollywood Defendants justify their own acts as ones deserving of applause, when in fact the film glorifies international espionage for profit.

5.      Upon information and belief together, these Hollywood Defendants have concertedly acted without regard for the health, safety and welfare of all U.S. Citizens, have aided and abetted the illegal and morally wrongful acts of Defendant Snowden, and have callously chosen to commercialize, capitalize and commoditize for their conscienceless benefit, the stolen classified CIA/NSA and other secret documents referred to and revealed in the film.

6.      Upon information and belief U.S. national security has been seriously damaged, human lives placed at risk or worse, and military and non-military assets compromised not just

by Defendant Snowden's actions but also by the Hollywood Defendants' direct and indirect participation collaborating with Defendant Snowden to facilitate the dissemination of top-secret documents to foreign enemies.

7.     This case is about supporting the federal government's role under *Snepp v. United States*, 444 U.S. 507 (1980) in order to stop the profiteering of the Hollywood Defendants and deter future government employees from breaching their fiduciary duties to the American people when they are entrusted with secret, confidential, or classified information as a condition of their hiring.[3]   Specifically, Mr. Edwards brings this action for his own injury, on behalf of others similarly situated, and on behalf of the U.S. Government, akin to a derivative action.   As a former Navy officer and holder of classified status for work on nuclear submarines, Mr. Edwards believes the American public should be protected from misuse of government property and diversion of funds needed to remedy the financial and other damage done when the Defendants in this case exploit such information for their own benefit. Upon information and belief, the sums subject to a constructive trust may well exceed hundreds of millions, if not billions of dollars, to achieve restitution for all expenditures of the U.S. government to protect human assets placed at risk, restore/revamp computer infrastructure, rebuild relationships with foreign governments, and respond to various enemies' resurgence efforts, due to the blowback associated with the film and the release of classified information to foreign enemies of this Nation.

8.     Plaintiff has expended funds to watch the film, in addition to other bases, he has standing to initiate and seek relief of the Court, under Article III of the Constitution, federal common law breach of fiduciary duty, the equitable nature of the relief at issue for ensuring

---

[3] See, e.g. Slip Op., *United States of America v. Ishmael Jones*, Civil No. 10-765 (Hon. Gerald Bruce Lee, J.) (E.D. Va. June 15, 2011) (Motions Hearing; granting summary judgment to United States Government and imposing constructive trust against intelligence official for breaching secrecy agreement based upon *Snepp* precedent).  A copy of this Motions Hearing is attached as Exhibit C.

proper functioning of government, and pray for equity to right the wrong being perpetrated on the American people by the Defendants' misuse of government property.

9.      Upon information and belief the Hollywood Defendants have improperly benefited to Plaintiff's detriment, as well as to others similarly situated, through, *inter alia*, the box office receipts for Citizenfour.[4]

## FACTUAL BASIS FOR CLAIMS

10.      On or about June 2013, the United States of America filed a criminal complaint against Defendant Snowden ("Criminal Complaint"), which subsequently was unsealed.  A copy of the unsealed Criminal Complaint is attached as Exhibit D.

11.      The Criminal Complaint alleged, among other things, that Defendant Snowden had violated the law by "Theft of Government Property," "Unauthorized Communication of National Defense Information," and "Willful Communication of Classified Communications Intelligence Information to an Unauthorized Person."  Exhibit D.

12.      Upon information and belief the factual basis for the claims against Defendant Snowden and the Hollywood Defendants are set forth in the following: the film Citzenfour (which Plaintiff will seek in discovery), a short documentary precursor of Citzenfour, of approximately 12 minutes and 34 seconds broadcast on PBS and published online by The Guardian Newspaper, Exhibit E, and in the attached articles by professional journalists, who interviewed Defendant Snowden, Defendant Poitras, and others and reported on the admissions, statements and other disclosures and conduct by Defendant Snowden and certain other Hollywood Defendants.  See Annexed Exhibit F, Eric Kohn, "Laura Poitras Explains How She Made Edward Snowden Doc 'Citizenfour' in Secret (Part 1)," Indiewire (October 20, 2014);

---

[4]   www.boxofficemojo.com/movies/?id=citizenfour.htm   <last visited on December 18, 2014> (Current worldwide box office grosses $2,110,484.00.)

Exhibit G, Michael B. Kelley, "We Now Know A Lot More About Edward Snowden's Epic

Heist – And It's Troubling," Business Insider (August 17, 2014), Exhibit H, Fred Kaplan, "Sins

of Omission: Citizenfour is a fine documentary. Too bad the director glossed over some

important details – and Edward Snowden didn't gloss over more," Slate (Oct. 16, 2014)

<available at

http://www.slate.com/articles/news_and_politics/war_stories/2014/10/citizenfour_review_laura_

poitras_edward_snowden_documentary.html <last visited on December 17, 2014>.

13.     It is a matter of public record, and upon information and belief based upon filmed

statements and interviews by Defendant Snowden and Defendant Poitras, as more fully described

below, that Defendant Snowden admitted that he was an "advisor" and/or official employee at a

high level and therefore worked for certain United States intelligence agencies, including Central

Intelligence Agency, National Security Agency, and Defense Intelligence Agency.

14.     Upon information and belief, based upon his own filmed and written admissions,

Defendant Snowden also acknowledged that he had purloined secret and/or classified

government information, "worked as a contractor for the NSA in Honolulu," Exhibit G at 1, and

then subsequently traveled to Hong Kong, where he met Defendant Poitras and provided her

with the purloined materials."  Exhibit G at 1, 4; Exhibit H at 1, 2.

15.     Upon information and belief, Defendant Poitras exchanged emails with Defendant

Snowden before traveling to Hong Kong, to meet with him and film him.  Exhibit F at 3; Exhibit

E.

16.     Citizenfour depicts, among other things, Defendant Snowden describing his theft

of large quantities of confidential, classified or secret information, some of it involving domestic

operations of his employers, some of it involving foreign operations.  See e.g. Exhibit G; Exhibit E.

17.    Upon information and belief, and based upon the exhibits annexed hereto and in the film Citizenfour, subsequently Defendant Snowden traveled to Russia as a fugitive from the United States, and Defendant Poitras traveled to Berlin, where she continued working on a documentary film in 2013 and 2014 about the information she received from Defendant Snowden.  See, e.g., Exhibits H, F at 4.

18.    Upon information and belief, Defendant Poitras stated that she "set up a bunch of meetings during the Berlin International Film Festival in February [in 2014], including one with Tom Quinn at [Defendant] Radius-TWC."  Exhibit F at 4.   Further upon information and belief, Defendant Poitras stated that Quinn said "We really want to do this film."  Subsequently, as set forth in the full credits for Citizenfour published in the New York Times, http://www.nytimes.com/movies/movie/477707/Citizenfour/credits <last visited on December 17, 2014>, Defendant Radius-TWC was credited as the Domestic Theatrical distributor of the film.  Further upon information and belief, Defendant Radius-TWC provided funding to Defendants Poitras and Praxis and, in return, made a financial arrangement to receive revenues from Citizenfour with knowledge of the crimes committed against the United States by Defendant Snowden and with knowledge that Defendant Poitras has possession, custody and control of purloined information illegally obtained by Defendant Snowden and Defendant Radius-TWC hoped to obtain financial benefit therefrom as entertainment, among other things.

19.    Upon information and belief, Defendant Weyermann was a friend of Defendant Poitras and had helped obtain funding for at least one previous documentary film by Defendant Poitras.  Further upon information and belief, Defendant Poitras admitted that "Participant

Media's Diane Weyermann got involved" with the financing and other tasks for Citizenfour.  See Exhibit F at 4.

20.     Upon information and belief, Defendant Poitras admitted that Defendant Weyermann actively sought to accelerate the production and release of Citizenfour and Defendant Weyermann stated: "Ok, let's do this one," but then had to tell her bosses, "We're doing this film, but there's not going to be a treatment or a rough cut.  You're just going to have to trust us – me [i.e. Defendant Weyermann], Laura and the filmmaking team that we'll deliver." Exhibit F at 4.  Further, upon information and belief, Defendant Poitras also admitted that Defendant Weyermann "made a couple visits over to Berlin to see the cut,"  id, and that Defendant Radius-TWC also came over for the same purpose.  Id.

21.     Upon information and belief, Defendant Weyermann was personally friendly with former CIA Officer Valerie Plame Wilson, and also worked with Ms. Wilson on a documentary film entitled "Countdown to Zero," which Defendant Participant Media helped finance and Defendant Weyermann served as an Executive Producer.  Further upon information and belief, Defendant Participant Media and Defendant Weyermann were also involved in the production, distribution and financing of Ms. Wilson's feature film based upon her memoir, "Fair Game." Upon information and belief through this professional and personal relationship with Ms. Wilson, Defendant Weyermann was aware that Ms. Wilson, as a former CIA officer, was required to sign a secrecy agreement that would require her and anyone to whom she disclosed classified information without authorization to disgorge and otherwise return to the U.S. Government all financial benefits obtained from any such unauthorized disclosure.  Further upon information and belief, Defendant Weyermann, knew that Ms. Wilson had litigated a First Amendment claim against CIA.  By Wilson having presented her manuscript to the mandatory

publication review board and following the rules of her secrecy agreement Wilson was never required to disgorge or otherwise return any money to the United States.   Because Wilson and Defendant Weyermann worked together on that earlier production, upon information and belief, Defendant Weyermann knew the consequences of not following the prepublication rules required by government intelligence officials.  So when Defendant Weyermann made the request to Defendant Participant Media's management to "trust her" she knew or had reason to know both that the Defendant Snowden materials, having been stolen, were never reviewed by the proper intelligence entity review board and she knew or had reason to know the material fact that Defendant Participant Media's investment in the film Citizenfour could be jeopardized if the issue of the secrecy agreement approval requirement was ever raised.

22.    Upon information and belief, the Hollywood Defendants knew or should have known through Defendant Weyermann that Citizenfour would be subject to Defendant Snowden's secrecy agreement with CIA similar to Ms. Wilson's agreement with CIA, and Defendant Weyermann knew that by personally ensuring the funding of Citizenfour by aiding and abetting Defendant Poitras and Defendant Praxis, all of the Hollywood Defendants would be subject to the confiscation of funds provided to Defendants Poitras and Praxis, as well as to other potential civil claims and criminal damages arising from Defendant Weyermann's  deliberate acts and omissions.

23.    Upon information and belief, Defendant Participant Media and Defendant Skoll had constructive or actual knowledge of the consequences of Defendant Weyermann's misconduct, or, in the alternative, upon information and belief, were misled by Defendant Weyermann's *ultra vires* conduct and therefore subject to potentially millions or billions of

dollars in damages based upon their involvement in Citizenfour and the harm to the United States that has resulted from that film, along with all of the other Hollywood Defendants.

24.     Subsequently, as set forth in the full credits for Citizenfour published in the New York Times, http://www.nytimes.com/movies/movie/477707/Citizenfour/credits <last visited on December 17, 2014>, Defendant Diane Weyermann was listed as one of the Executive Producers of Citizenfour and Defendant Jeff Skoll was also listed as one of the Executive Producers of Citizenfour.

25.     Upon information and belief, Defendant Participant Media, based primarily upon Defendant Weyermann's representations to her bosses to trust her, induced Defendant Participant Media, through the final approval of Defendant Skoll, to provide funding.[5]

26.     Upon information and belief, like Ms. Wilson's secrecy agreement requirement, in order to qualify to obtain access to the information as an advisor and/or employee to CIA, NSA, and DIA, as well as a contractor for the NSA, Defendant Snowden, as a condition of receiving the information he subsequently purloined and provided to Defendant Poitras, Defendant Praxis and disclosed to the Hollywood Defendants, was required to sign written agreements with CIA, NSA, and DIA in which he agreed not to provide any information to others, and to "assign to the United States Government all rights, title and interest in any and all royalties, remunerations and emoluments that have resulted or will result or may result from any divulgence, publication or revelation of information [by him] which is carried out" in breach of those agreements. See e.g. Exhibit I at ¶ 5, ¶12.

27.     Attached as Exhibit I is a sample CIA secrecy agreement, signed by Ms. Wilson along with her Security Regulations Certification (which was declassified in redacted form by

_____

[5] According to Forbes Magazine Jeff Skoll's "Real Time Net Worth" is $4.1 Billion. www.forbes.com/profile/jeffrey-skoll/  <last visited on December 18, 2014>

CIA).  Upon information and belief, other secrecy requirements, including a Standard Form 312 were signed by Defendant Snowden and consequences of signing those forms were disclosed to him.[6] www.archives.gov/isoo/security-forms/sf312.pdf www.wrc.noaa.gov/wrso/forms/standard-form-312_booklet.pdf <last visited on December 18, 2014>

## JURISDICTION AND VENUE

28.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, 28 U.S.C. § 1361, and 28 U.S. C. § 1332(a)(1).

29.   Venue is proper in the District Court of Kansas pursuant to 28 U.S.C. § 1391 (b)(2) and 28 U.S.C. § 1391 (e)(1)(B) and (C).

## PARTIES

30.   Plaintiff is a United States citizen who resides in Kansas.

31.   Upon information and belief Defendant Edward Joseph Snowden is a United States citizen who is a fugitive from justice and is presently residing in Russia.

32.   Upon information and belief Defendant Laura Poitras is a United States citizen who resides in New York, NY, and is temporarily living in Berlin, Germany.  Defendant Poitras is sued in both her individual capacity and in her corporate capacity as a stakeholder in Defendant Praxis Films, Inc.

---

[6] Defendant Snowden apparently believes that he is entitled to function as his own federal judge by interpreting the legal meaning of Form 312 to absolve himself.  An interview in the Washington Post reveals the depth of Defendant Snowden's disregard for his fiduciary duties and the law. The article states as follows: "It is commonly said of Snowden that he broke an oath of secrecy, a turn of phrase that captures a sense of betrayal. NSA Director Keith B. Alexander and Director of National Intelligence James R. Clapper Jr., among many others, have used that formula. In his interview with The Post, **Snowden noted matter-of-factly that Standard Form 312, the classified-information nondisclosure agreement, is a civil contract.  He signed it, but he pledged his fealty elsewhere.** *(emphasis added)*  "The oath of allegiance is not an oath of secrecy," he said. "That is an oath to the Constitution. That is the oath that I kept that Keith Alexander and James Clapper did not." Barton Gellman, "Edward Snowden, after months of NSA revelations, says his mission's accomplished." The Washington Post, December 23, 2013 http://www.washingtonpost.com/world/national-security/edward-snowden-after-months-of-nsa-revelations-says-his-missions-accomplished/2013/12/23/49fc36de-6c1c-11e3-a523-fe73f0ff6b8d_story.html <last visited on December 18, 2014>

33.     Upon information and belief Defendant Praxis Films, Inc. ("Praxis") is a New York domestic business corporation, which at all times relevant to the issues in this case was engaged in business relationships with Defendant Poitras, as well as other Hollywood Defendants herein.  Defendant Praxis is sued in both its individual, corporate capacity for the alleged wrongful acts of its employee/agents and as employer of Defendant Poitras for her alleged wrongdoings under, *inter alia*, the theory of respondeat superior.

34.     Upon information and belief Defendant Participant Media, LLC ("Participant") is a Delaware domestic LLC, with its principal place of business in California as well as an office in New York, NY.   Upon information and belief at all times relevant to the issues in this case Defendant Participant Media was also engaged in business relationships with other Hollywood Defendants herein.  Defendant Participant Media is sued in both its individual, limited liability company capacity for the wrongful acts of its members, employees and agents and is sued as employer of Defendants Weyermann and Skoll for their alleged wrongdoings under the theory of, *inter alia*, respondeat superior.

35.     Upon information and belief Defendant Diane Weyermann is a United States citizen who resides in California and/or Florida.  Upon information and belief at all times relevant to the issues in this case she was the executive producer in control of Citizenfour and exerted extensive personal control over the making of the film.  Defendant Weyermann is sued in both her individual capacity and in her limited liability company capacity as an executive team member, employee and/or stakeholder in Defendant Participant Media, LLC.

36.     Upon information and belief Defendant Jeffrey Skoll is either a Canadian or United States citizen who resides in California.  Upon information and belief at all times relevant to the issues in this case he was an executive producer of Citizenfour, as well as the majority

owner of the limited liability company, Defendant Participant Media, LLC. Defendant Skoll is sued in both his individual capacity and in his limited liability company capacity as founder, chairman, employee and/or stakeholder of Defendant Participant Media, LLC.

37.   Upon information and belief Defendant The Weinstein Company LLC is a Delaware domestic LLC, with its principal place of business in California as well as an office in New York, NY, which at all times relevant to the issues in this case, was a distributor of the film, as well as engaged in business relationships with other Hollywood Defendants herein. Defendant The Weinstein Company LLC is sued in its limited liability capacity, although believed to be acting through a division known as Radius-TWC. Upon information and belief Radius-TWC is a "boutique label from the Weinstein Company (TWC)…the first studio division dedicated to both multi-platform VOD and theatrical distribution."[7]

38.   Upon information and belief other foreign and domestic entities and individuals may be involved and may be added as additional information is obtained through discovery. (The John and Jane Does.)

39.   Upon information and belief under 28 U.S.C. § 1331, Plaintiff, on behalf of himself and on behalf of all other moviegoers, who themselves paid to see Citizenfour, expended funds that instead of going to the United States Treasury have instead wrongly been conveyed to certain named Defendants and as yet unknown others, thus based upon the fiduciary breaches of the Defendants and other equitable issues, Plaintiff raises a federal question claim for relief.

40.   In addition to the direct financial stake of Plaintiff and those upon whose behalf he brings suit, the injury in fact under Article III of the Constitution for which Plaintiff seeks redress is not limited to economic injuries and interests but also because he falls within the zone

---

[7] http://www.radiustwc.com/about/

of interest in a derivative action on behalf of the American Public to support and enforce a constructive trust by the United States Government.

41.     Under 28 U.S.C. § 1332 (a)(1), the Plaintiff resides in Kansas, the amount in controversy exceeds $75,000.00 and all other parties reside or have their principal place of business in other states or a foreign country. He sues in both his individual capacity and as a representative of other similarly situated Plaintiffs.  He also sues on behalf of the United States of America in the nature of a private attorney general, under theories of a derivative action, as well as a third party beneficiary of any relevant agreement[s] Defendant Snowden executed and other obligations he breached.

42.     Defendant Snowden is sued in his individual capacity and in his capacity as a former government official/employee and/or contractor, who breached his fiduciary duties to the United States and the American people.

43.     Upon information and belief there are others who may seek to benefit from the commercialization of the film, i.e. the John and Jane Does.

## COUNT I
## (CONSTRUCTIVE TRUST FOR BREACH OF FIDUCIARY DUTY)

The Plaintiff incorporates all preceding paragraphs by reference, as if fully set forth herein.

44.     Upon information and belief, Defendant Snowden voluntarily, willingly, and knowingly entered into contractual agreements with the United States of America when he signed a Security Regulations Certification[s], Secrecy Agreement[s] and/or Non-Disclosure Agreement[s] [hereinafter referred to individually and/or collectively as "Secrecy Agreement[s]"] and agreed to be bound by their terms and conditions.  Upon information and belief, among the Secrecy Agreement[s]' terms and conditions was an express requirement that

Defendant Snowden submit any intelligence-related materials to the government for prepublication review and more importantly to refrain from releasing or publishing in any manner any confidential government information without written permission to do so from the appropriate government superiors.

45.     Upon information and belief, Defendant Snowden knowingly, willfully, and deliberately breached his Secrecy Agreement[s], both by disclosing confidential materials to unauthorized recipients, including but not limited to Defendant Poitras, and by releasing for further use and publication confidential information without utilizing the government's prepublication review process.  Upon information and belief he defied the government's express means of properly releasing any information about his intelligence connections and government information by way of the prepublication review board.

46.     Upon information and belief under both common law and the Secrecy Agreement[s], Defendant Snowden had a fiduciary relationship with the United States of America and the CIA/NSA/DIA based on trust and special confidence that derived from the facts that Defendant Snowden was employed by the CIA/NSA/DIA, transacted business on behalf of these government agencies, was given regular and special access to classified national security information, and entered into the Secrecy Agreement[s].

47.     Upon information and belief, Defendant Snowden owed to the United States and its agencies a fiduciary duty of loyalty to protect information pertaining to intelligence sources and methods from unauthorized disclosure, to submit to the prepublication review board for its review any intelligence-related materials intended for publication, and to not release or cause to be published or disseminate intelligence-related information unless and until the agencies had

completed their prepublication review process and Defendant Snowden had received written approval from the agencies for such release.

48.     Upon information and belief Defendant Snowden breached his fiduciary duties by releasing and participating in the production of the film Citizenfour without first allowing the agencies to complete their prepublication review process and without first obtaining written permission to do so from the agencies.

49.     Upon information and belief as a direct and proximate result of Defendant Snowden's breach of his contractual and common law fiduciary duties, the United States has been damaged, *inter alia,* by the undermining of confidence and trust in the intelligence agencies for whom he worked and their prepublication review process, thereby hampering the ability of the agencies and their Directors to perform their respective statutory duties, and Defendant Snowden, as well as the Hollywood Defendants, have been unjustly enriched in the advantages he receives as a fugitive residing in Russia with the emoluments bestowed upon him based upon his unique status as a purveyor of purloined secrets from the United States resulting from the unauthorized release of documents and through the public popularity he has garnered through the production and distribution of Citizenfour.

50.     Upon information and belief Defendant Snowden has engaged in a course of conduct evidencing a propensity to commit further breaches of his contractual and/or fiduciary duties, in concert with the Hollywood Defendants, and to cause further damage to the United States, including irreparable injury for which the United States has no other adequate remedy at law or in equity.

51.     Upon information and belief the Hollywood Defendants have benefitted both economically and in their standing in the community based upon the breach of Defendant

Snowden's duties, which the Hollywood Defendants and Defendant Snowden jointly and severally committed through the efforts of assisting, aiding and abetting the theft and misuse of stolen government documents, as evidenced by the facts set forth herein.

52.     Upon information and belief the Plaintiff as well as others similarly situated individuals and the American people as a whole are the intended beneficiaries of the secrecy agreements, loyalty agreements, and fiduciary duties arising therefrom of intelligence officials, including Defendant Snowden, and they have been exposed to harm by the breach of all Defendants in that the instability caused within the United States and abroad has jeopardized their safety and security.  Plaintiff, along with the American people he represents, are entitled to seek derivative and direct and indirect relief from federal officials, including the Attorney General of the United States, and have every reason to believe that bringing attention to the remedy of a constructive trust that the United States Department of Justice will seek this necessary routinely sought remedy, on its own behalf, the imposition of a constructive trust upon the Defendants.

53.     Upon information and belief, Plaintiff, and the American people he represents have a recognized right to seek derivative and direct and indirect relief against officials who have a duty to act under the extraordinary facts of this case and recoup for the United States Government, the Plaintiff and all others similarly situated.  Where a contractual relationship exists, where the Plaintiff places confidence in another that the obligations will be enforced and there is an inequality raised by the Plaintiff's reliance upon the Government and its employees to exercise their authority, fulfill their fiduciary duties to Plaintiff and all others similarly situated and where the Hollywood Defendants exerted power and control over stolen documents, produced a movie lauding their own wrongful acts and used that information to cause Plaintiff to

expend funds that should not belong to the Hollywood Defendants, but to the United States Government, the breach of the fiduciary duty by Defendants gives rise to an undue advantage over Plaintiff and for which the equitable remedy of a constructive trust should be imposed to protect Plaintiff and deter future breaches by others.

WHEREFORE, the Plaintiff on behalf of himself, others similarly situated and on behalf of the United States respectfully requests that the Court award the following relief:

A. Declare that Defendant Snowden has breached his contracts, the Secrecy Agreement[s] and his fiduciary obligations to the Plaintiff, the American people and to the Government of the United States;

B. Declare the Hollywood Defendants to be unlawful benefactors of the wrongfully disclosed documents by their misuse and possession of such stolen property;

C. Impose a constructive trust over, and permit the United States Government to obtain an accounting of, all monies, gains, profits, royalties, and other advantages that all Defendants have derived, or will derive in the future, from the publication, distribution, sale, serialization, or republication in any form, including any other rights, of the work entitled "Citizenfour," whether or not such gains remain in Defendant Snowden's possession or in the possession, custody or control, whether direct or indirect, of any other Defendant herein.

D. Require the Defendants to relinquish the proceeds accounted for to the United States;

E. To the extent that any such revenues, gains, royalties or other advantages are no longer in Defendant Snowden's possession, but are in other Defendants' possession, custody or control, whether direct or indirect, to seek and obtain an award for

monetary damages for proceeds and other benefits wrongfully obtained thereby as a result of the breach; and

F.  Grant to the United States, the Plaintiff and others similarly situated, such other relief as the Court may deem just and proper, including but not limited to, Plaintiff's costs and attorney's fees herein.

Dated: December 18, 2014.

## <u>DESIGNATION OF TRIAL</u>

Plaintiff hereby requests the trial in this case be conducted in Kansas City, Kansas.  No Jury Trial is requested.

<u>/s/ Jean Lamfers</u>
Lamfers & Associates, L.C.
Jean Lamfers # 12707
7003 Martindale
Shawnee, KS  66218
(913) 962-8200
jl@lamferslaw.com
Attorney for Plaintiff Horace B. Edwards