# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

HORACE B. EDWARDS, ET AL.,    )
    )
    PLAINTIFFS,    )
    )
V.    )    **CASE NO. 14-CV-02631-JAR-TJJ**
    )
EDWARD JOSEPH SNOWDEN, ET AL.,    )
    )
    DEFENDANTS.    )


## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## PLAINTIFF'S FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I   PRELIMINARY STATEMENT. .................................................................6

II.   FACT STATEMENT. ...........................................................................8

III.   ARGUMENT. ..................................................................................10

    A.   No Allegations Support Venue in This District.................................10

    B.   Plaintiff Fails to Allege Facts Sufficient to Demonstrate Standing.....................12

        1.   No "Economic Injury" is Pleaded. ........................................13

        2.   Plaintiff's Generalized Grievance Regarding Injury to the American People is Insufficient for Standing. .......................................14

        3.   Plaintiff is Not Within the Zone of Interest of Any Law Alleged...........15

    C.   Plaintiff Fails to State a Claim Upon Which Relief May be Granted.................15

        1.   Plaintiff Fails to Allege Breach of any Fiduciary Duty Owed to Him. ..................................................................................16

        2.   Plaintiff Cannot Sue on Behalf of the United States. ..............................18

            (1)   Plaintiff Cannot Create by Analogy a New Cause of Action on Behalf of the United States...................................................18

            (2)   Plaintiff Cannot Add the United States as an Involuntary Plaintiff....................................................................................19

    D.   *CITIZENFOUR* is Protected by the First Amendment. ...........................................20

        1.   Publication of Truthful Information on a Matter of Public Interest is Protected, Regardless of How it was Obtained by a Third Party. ........21

        2.   The First Amendment Forbids Punishing Expression Based on Content...............................................................................22

        3.   A Constructive Trust Violates the First Amendment Even if No Prior Restraint Occurs. .......................................................24

IV.   CONCLUSION. ...............................................................................25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Allen v. Wright*,
   468 U.S. 737 (1984) .........................................................................................7

*Ashcroft v. Am. Civil Liberties Union*,
   535 U.S. 564 (2002) .......................................................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................18

*Bartnicki v. Vopper*,
   532 U.S. 514 (2001) ........................................................................... 16, 17, 18

*Boyle v. United Technologies Corp.*,
   487 U.S. 500 (1988) .......................................................................................11

*Burton v. Countrywide Bank, FSB*,
   No. 10-cv-00298-EJL-LMB, 2012 WL 976151 (D. Idaho Mar. 1, 2012) ..............................13

*Citizens United v. Federal Election Com'n*,
   558 U.S. 310 (2010) .......................................................................................17

*Cruz v. United States*,
   219 F. Supp. 2d 1027 (N.D. Cal. 2002)..................................................................13

*Daniel v. Am. Bd. of Emergency Med.*,
   428 F.3d 408 (2d Cir. 2005) .............................................................................6

*Elk Grove Unified School Dist. v. Newdow*,
   542 U.S. 1 (2004)...........................................................................................7

*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*,
   618 F.3d 1153 (10th Cir. 2010) .........................................................................5

*Galena St. Fund, L.P. v. Wells Fargo Bank, N.A.*,
   No. 12-cv-00587, 2013 WL 2114372 (D. Colo. May 15, 2013) ...........................................11

*Garrett v. Branson Commerce Pakr Cmty. Improvement Dist.*,
   No. 13-CV-2551-JAR-JPO, 2014 WL 4853704 (D. Kan. Sept. 30, 2014)................................1

*Gen. Bedding Corp. v. Echevarria*,
   714 F. Supp. 1142 (D. Kan. 1989) ......................................................................5

*Goff v. Hackett Stone Co.*,
   No. 98-7137, 1999 WL 397409 (10th Cir. Jun. 17, 1999) .............................................5

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*Hoopa Valley Tribe v. U.S.*,
  597 F.3d 1278 (Fed. Cir. 2010).................................................................................9

*Jordan Patterson Post v. Chaffee*,
  103 F.R.D. 523 (D. Kan. 1984)................................................................................15

*Landmark Communications v. Virginia*,
  435 U.S. 829 (1978)................................................................................................17

*LeRoy v. Great Western United Corp.*,
  443 U.S. 173 (1979)..................................................................................................6

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
  134 S. Ct. 1377 (2014)..............................................................................................7

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..............................................................................................7, 9

*M.K.C. Equip. Co. v. M.A.I.L. Code, Inc.*,
  843 F. Supp. 679 (D. Kan. 1994)..............................................................................5

*Miller v. Staab*,
  No. 91,931, 2005 WL 1429834 (Kan. Ct. App. Jun. 17, 2005).............................12

*Mills v. Alabama*,
  384 U.S. 214 (1966)................................................................................................16

*Minneapolis Star and Tribune Co. v. Minnesota Com'r of Revenue*,
  460 U.S. 575 (1983)................................................................................................19

*New York Times v. United States*,
  403 U.S. 713 (1971)............................................................................................1, 19

*Operating Engineers Local 101 Pension Fund v. Al Muehlberger Concrete Const., Inc.*,
  No. 13-2050-JAR-DJW, 2013 WL 5409116 (D. Kan. Sept. 26, 2013)....................3

*Rivera v. Wyeth-Ayerst Laboratories*,
  283 F.3d 315 (5th Cir. 2002) ...................................................................................8

*Sheffield Steel Corp. v. HMK Enters. (In re Sheffield Steel Corp.)*,
  320 B.R. 405 (Bankr. N.D. Okla. 2004)..................................................................12

*Sheldon v. W. Bend Equip. Corp.*,
  718 F.2d 603 (3rd Cir. 1983) ..................................................................................15

**TABLE OF AUTHORITIES**
**(Continued)**

Page

*Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*,
502 U.S. 105 (1991) .................................................................................................... 18

*Smith v. Daily Mail*,
443 U.S. 97 (1979) ................................................................................................. 17, 19

*Snepp v. United States*,
444 U.S. 507 (1980) .................................................................................................... 12

*Stalley ex rel. U.S. v. Orlando Regional Healthcare Sys., Inc.*,
524 F.3d 1229 (11th Cir. 2008) .................................................................................. 14

*Street v. New York*,
394 U.S. 576 (1969) .................................................................................................... 18

*Strunk v. Obama*,
880 F. Supp. 2d 1 (D.D.C. 2011) .................................................................................. 9

*TMJ Implants, Inc. v. Aetna, Inc.*,
498 F.3d 1175 (10th Cir. 2007) .................................................................................. 16

*U.S. v. Morison*,
844 F. 2d 1057 (4th Cir. 1988) ................................................................................... 18

*U.S. v. Rosen*,
445 F. Supp. 2d 602 (2006) ........................................................................................ 18

*U.S. v. United Serv. Auto Ass'n.*,
968 F.2d 1000 (10th Cir. 1992) .................................................................................. 12

*U.S. v. Walli*,
No. 12-cr-107, 2013 WL 1837152 (E. D. Tenn. Jan. 2, 2013) ................................... 10

*United Seniors Ass'n, Inc. v. Philip Morris USA*,
500 F.3d 19 (1st Cir. 2007) ......................................................................................... 14

*Utah Shared Access Alliance v. Carpenter*,
463 F.3d 1125 (10th Cir. 2006) ................................................................................ 7, 9

*Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*,
529 U.S. 765 (2000) .................................................................................................... 14

*Warth v. Seldin*,
422 U.S. 490 (1975) .................................................................................................. 7, 9

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

*Wheat v. Lee*,
  No. C-12-6299, 2013 WL 2285174 (N.D. Cal. May 23, 2013).................................13

**Rules**

Fed. R. Civ. P. 19(a)(2) ..........................................................................14

Fed. R. Civ. P. 8(a)(2) ...........................................................................10

Fed. R. Evid. 201 ...................................................................................3

**Statutes**

25 U.S.C. § 81 ......................................................................................14

28 U.S.C. § 1391(b)(2)..............................................................................5

28 U.S.C. § 516 ....................................................................................13

31 U.S.C. § 3729(a) ...............................................................................14

31 U.S.C. §§ 3729–3733 ..........................................................................14

35 U.S.C. § 292(b) ................................................................................14

**Other Authorities**

Federal Practice and Procedure § 4514 (2d ed.) ............................................11

Defendants Praxis Films, Inc., Laura Poitras, Participant Media, LLC, Diane Weyermann, Jeffrey Skoll, and The Weinstein Company LLC ("Documentary Film Defendants") submit this memorandum in support of their motion to dismiss plaintiff's First Amended Complaint ("FAC").[1]

## I.    PRELIMINARY STATEMENT.

In the summer of 2013, Edward Snowden became America's most high profile whistleblower since Daniel Ellsberg leaked the *Pentagon Papers* to *The New York Times* and *The Washington Post* some forty years earlier. *See New York Times v. United States*, 403 U.S. 713 (1971). Mr. Snowden leaked classified documents to journalists about a previously unknown—and officially disavowed—global surveillance system run by the National Security Agency ("NSA"). *See* FAC ¶¶ 17, 47. Defendant Laura Poitras was one of the first journalists to receive and report on these documents. *See* FAC Ex. F at 2. Her Academy Award nominated documentary *CITIZENFOUR* details Mr. Snowden's story, from his initial disclosures through their worldwide ramifications, both personal and political. *See* Ex. 1.[2]

Plaintiff Horace Edwards bought a ticket to *CITIZENFOUR* and, according to his First Amended Complaint, was "outraged" by what he called a "charade" of a documentary. FAC ¶¶ 1–2. Based on nothing more, Mr. Edwards brought this action—purportedly "on behalf of the

---

[1] Defendant Edward Snowden is not a party to this motion.

[2] As this Court recently explained, a court may consider—without converting a motion to dismiss to a motion for summary judgment—an exhibit referred to in the complaint (but not attached) if it is "central" to the plaintiff's claims. *See Garrett v. Branson Commerce Pakr Cmty. Improvement Dist.*, No. 13-CV-2551-JAR-JPO, 2014 WL 4853704, at *2 (D. Kan. Sept. 30, 2014). *CITIZENFOUR* is repeatedly referenced and relied upon in Mr. Edwards' First Amended Complaint, and is unquestionably central to his claims. Accordingly, the Documentary Film Defendants have herewith filed two copies of the documentary, as well as a true and correct transcript of the same, as Exhibit 1. Pinpoint cites to Exhibit 1 refer to pages of the transcript.

American people"—to silence Ms. Poitras and her documentary CITIZENFOUR.  FAC ¶ 1. There is no legal basis whatsoever for doing so.  Moreover, the "constructive trust" demanded runs afoul of our nation's long cherished First Amendment protections.  It would be unconstitutional and unprecedented to apply this circumscribed legal remedy to journalists, for it would punish the protected publication of truthful information on a matter of public interest and impermissibly chill the press from reporting on unconstitutional abuses by the United States government.

This Court need not reach these constitutional issues, however, as subjective beliefs and opinions about Mr. Snowden and the merits of CITIZENFOUR do not give rise to a cognizable legal claim.  As an initial matter, this lawsuit must be dismissed for improper venue.  Mr. Edwards has not offered a single allegation that any "events . . . giving rise to the claim" occurred in Kansas, much less a "substantial part of the events" as required.  Moreover, Mr. Edwards does not have standing to bring this lawsuit.  He cannot claim to have personally suffered "economic injury" because he believes the money he paid to see CITIZENFOUR should have instead gone to the U.S. government, and his claimed harm to national security is precisely the type of generalized griev-ance regarding enforcement of the laws long deemed insufficient for standing.  Mr. Edwards also fails to state a cause of action upon which relief can be granted.  His claim of breach of a fiduci-ary duty fails because he does not allege the required facts necessary to demonstrate that any de-fendant owed him a fiduciary duty.  And his attempt to sue on behalf of the U.S. or the American people fails, as no statute authorizes suits of this type by private individuals (so-called "deriva-tive suits"), and no law authorizes adding the U.S. as an involuntary plaintiff.

For these reasons, the Documentary Film Defendants urge this Court to dismiss Mr. Ed-wards' frivolous lawsuit.

## II.     FACT STATEMENT.

Laura Poitras is an award-winning American journalist and documentary film director. She has received numerous awards for her work.  She has twice been nominated for an Academy Award for Best Documentary Feature, for *My Country, My Country* and *CITIZENFOUR*, the documentary that is the subject of this litigation.[3]  Her journalism has likewise received numerous awards, and her reporting of the illegal NSA surveillance program disclosed by whistleblower Edward Snowden contributed to the 2014 Pulitzer Prize for Public Service awarded to *The Guardian* and *The Washington Post*.[4]

Edward Snowden is a computer systems analyst who leaked classified documents to journalists about a secret global surveillance program run by the NSA.  Ex. 1 at 29–31, 45–46. In June 2013, Mr. Snowden met with journalists Ms. Poitras, Glenn Greenwald, and Ewen Macaskill in Hong Kong.  FAC ¶ 15.  In the following months, news articles appeared in press outlets around the world, including *The Guardian*, *The Washington Post*, *The New York Times*, and the like.  Ex. 1 at 30–31, 37–40.

---

[3] *CitizenFour: Documentary Feature - Nominees - Oscars 2015*, The Oscars, *available at* http://oscar.go.com/nominees/documentary-feature/citizenfour.  The Documentary Film Defendants request the Court take judicial notice of this fact.  "Under Fed. R. Evid. 201, the Court may take judicial notice at any time of the proceeding of a fact 'that is not subject to reasonable dispute because it [ ] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'"  *Operating Engineers Local 101 Pension Fund v. Al Muehlberger Concrete Const., Inc.*, No. 13-2050-JAR-DJW, 2013 WL 5409116, at *2 (D. Kan. Sept. 26, 2013).  The Oscars' website is an authoritative source listing nominees for the prestigious award, whose accuracy cannot reasonably be questioned.

[4] *The 2014 Pulitzer Prize Winners: Public Service*, The Pulitzer Prizes (2014), *available at* http://www.pulitzer.org/citation/2014-Public-Service.  The Documentary Film Defendants also request the Court take judicial notice of this fact, because the Pulitzer Prize's website is an authoritative source listing recipients of the prestigious award, whose accuracy cannot reasonably be questioned.

These news articles disclosed a myriad of previously unknown NSA surveillance programs.  Amongst other details, the news reports revealed that the NSA was spying on millions of people by tracking their cell phones, email accounts, and tapping into Yahoo, Microsoft, Facebook, YouTube, and Google to obtain information.  Ex. 1 at 31–32, 37–38.  These news articles precipitated an intense, ongoing debate on privacy and warrantless domestic surveillance in the United States.  *Id.* at 54.  In response, the United States filed a criminal action against Mr. Snowden.  FAC ¶ 11.  The United States then sought to extradite Mr. Snowden from Hong Kong.  Ex. 1 at 58.  At the same time, Mr. Snowden left Hong Kong for Moscow, where he received asylum.  *Id.* at 63.

*CITIZENFOUR* is Ms. Poitras' documentary about Mr. Snowden.  It follows Mr. Snowden from his first meetings with Ms. Poitras (and other journalists) in Hong Kong, through the initial worldwide disclosures about the secret NSA surveillance programs, to the resulting personal and political ramifications.  *See* Ex. 1.  Ms. Poitras directed the documentary and produced it through her company Praxis Films, Inc.  FAC ¶¶ 2, 5.  Participant Media, LLC's Jeffrey Skoll and Diane Weyermann are executive producers of the documentary.  FAC ¶ 25.  The Weinstein Company LLC distributed it in the United States (other distributors distributed the documentary abroad).  FAC ¶ 19.

*CITIZENFOUR* has been met with widespread critical acclaim, but it is not without its detractors.  *See, e.g.* FAC Ex. H.  Mr. Edwards is one of them.  When he saw the documentary, he was "outraged" by its content.  FAC ¶ 2.  Rather than voice his criticisms in the myriad media forums available, Mr. Edwards instead set out to harm the documentary and its filmmakers through legal threats and action.  First, he reached out to the Academy of Motion Picture Arts and Sciences, its Executive Committee, and members, requesting that the documentary be

deemed ineligible for an Academy Award.  FAC Exs. A–B.  The Academy rejected this de-mand.[5]  Mr. Edwards then brought this lawsuit.

## III.   ARGUMENT.

### A.   No Allegations Support Venue in This District.

Plaintiff bears the burden of showing venue is proper.  *M.K.C. Equip. Co. v. M.A.I.L. Code, Inc.*, 843 F. Supp. 679, 682 (D. Kan. 1994).  Mr. Edwards alleges venue is proper in this District as to the Documentary Film Defendants by virtue of 28 U.S.C. § 1391(b)(2), which re-quires a civil action be brought in the district where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated."  *Id.*  To determine whether venue is proper under § 1391(b)(2), a court must first "examine the nature of the plaintiff's claims and the acts or omissions underlying those claims."  *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.,* 618 F.3d 1153, 1166 (10th Cir. 2010).  Next, a court must determine "whether substantial 'events material to those claims occurred' in the forum district."  *Id.*

In making this determination, the court must keep in mind that "venue statutes are gener-ally designed for the benefit of the defendants, and in determining what events or omissions give rise to a claim, the 'focus [is] on relevant activities of the defendant, not of the plaintiff.'"  *Goff v. Hackett Stone Co.*, No. 98-7137, 1999 WL 397409, at *1 (10th Cir. Jun. 17, 1999) (unpublished opinion); *see also Gen. Bedding Corp. v. Echevarria,* 714 F. Supp. 1142, 1145 (D. Kan. 1989) (In considering whether venue is proper, court should consider "the availability of witnesses, the

---

[5] Scott Feinberg, *Academy Rejects Challenge to 'Citizenfour' Oscar Eligibility (Exclusive)*, The Hollywood Reporter, December 23, 2014, *available at* http://www.hollywoodreporter.com/race/academy-rejects-challenge-citizenfour-oscar-759987.

accessibility of other relevant evidence, and the convenience of the defendant, but not the convenience of the plaintiff").

Here, Mr. Edwards' claims for breach of fiduciary duty and aiding and abetting stem from (1) emails exchanged between Mr. Snowden and Ms. Poitras, who are alleged to have been in Honolulu and Berlin, Germany, respectively, at the time, FAC ¶¶ 15, 18, 34, and (2) disclosures of confidential information by Mr. Snowden to Ms. Poitras in Hong Kong.  FAC ¶¶ 15–16.  It also allegedly stems from the production of the documentary by the so-called "Hollywood Defendants."  FAC ¶ 5.  Honolulu, Hollywood, and Berlin, Germany are not in Kansas.

In fact, there is no allegation that any defendant did anything in Kansas.  Rather, the *only* allegations in the First Amended Complaint regarding Kansas are that: (1) "Plaintiff . . . is a former Secretary of the Kansas Department of Transportation," FAC ¶ 2, and (2) "Plaintiff is a United States citizen who resides in Kansas."  FAC ¶ 31.  But *CITIZENFOUR* is not about the roads in Kansas, so Mr. Edwards' reference to his tenure as the KDOT Secretary a quarter century ago is wholly irrelevant.  Equally irrelevant to a proper venue analysis is Mr. Edwards' residence when it has no connection to the claim alleged.  *See LeRoy v. Great Western United Corp.,* 443 U.S. 173, 175 (1979) ("Congress did not intend to provide for venue at the residence of the plaintiff"); *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 431–432 (2d Cir. 2005).  Finally, it should be noted that Mr. Edwards does not even allege that he purchased his ticket to *CITIZENFOUR* in Kansas.

Because the First Amended Complaint is devoid of any allegations connecting defendants with Kansas, and because other allegations therein indicate the events purportedly giving rise to Mr. Edwards' claims occurred elsewhere, his First Amended Complaint should be dismissed for improper venue.

**B.      Plaintiff Fails to Allege Facts Sufficient to Demonstrate Standing.**

In every federal suit, "the party bringing the suit must establish standing to prosecute the action." *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11 (2004).  A plaintiff must establish both Article III standing—which enforces the Constitution's case-or-controversy requirement, and prudential standing—which embodies judicially imposed limits on the exercise of federal jurisdiction.  *See id.*  To establish Article III standing, a plaintiff must allege: (1) an injury in fact; (2) a causal relationship between the injury and the challenged act; and (3) a likelihood that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  In addition, to establish standing: (1) the plaintiff generally must assert his or her own legal rights; (2) the court must refrain from adjudicating generalized grievances most appropriately addressed by one of the other branches of government; and (3) the plaintiff's complaint must fall within the zone of interests protected by the law invoked.  *See Allen v. Wright*, 468 U.S. 737, 751 (1984); *Utah Shared Access Alliance v. Carpenter*, 463 F.3d 1125, 1137 (10th Cir. 2006); *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386–87 (2014).  If a plaintiff fails to establish Article III standing, the court lacks subject matter jurisdiction, and his lawsuit must be dismissed.  *See Warth v. Seldin*, 422 U.S. 490, 502 (1975).

The injuries Mr. Edwards alleges are insufficient for standing. *First*, Mr. Edwards alleges he "expended funds that instead of going to the United States Treasury have instead wrongly been conveyed to certain named Defendants," a so-called "economic injur[y]."  FAC ¶¶ 41–42. *Second*, Mr. Edwards alleges he "as well as others [*sic*] similarly situated individuals and the American people as a whole . . . have been exposed to harm by the breach of all Defendants in that the instability caused within the United States and abroad has jeopardized their safety and security."  FAC ¶ 54.  Finally, Mr. Edwards alleges "the injury in fact under Article III of the

Constitution for which Plaintiff seeks redress is not limited to economic injuries and interests but also because he falls within the zone of interest in a derivative action on behalf of the American Public to support and enforce a constructive trust by the United States Government." FAC ¶ 42. None of these ostensible injuries establish standing.

### 1.     No "Economic Injury" is Pleaded.

Mr. Edwards' allegation that he somehow suffered "economic injury" because he purchased a ticket to see *CITIZENFOUR* is contrary to both law and logic, and contradicted by his own allegations. He alleges he "purchased a ticket to Citizenfour *and watched the documentary. . .*" FAC ¶ 2 (emphasis added). In other words, he "expended funds" to watch the documentary, and did so. As such, there is no cognizable injury, as cases like *Rivera v. Wyeth-Ayerst Laboratories,* 283 F.3d 315 (5th Cir. 2002), illustrate. There, plaintiffs sued a manufacturer of painkillers after they were recalled. *Id.* at 316–317. Although plaintiffs did not claim the medication "caused them physical or emotional injury, was ineffective as a pain killer, or has any future health consequences to users," they nevertheless argued—as Mr. Edwards here alleges—"that their loss of cash is an 'economic injury.'" *Id.* at 319. The Fifth Circuit disagreed, noting that even if the defendant had "provided additional warnings or made [the painkiller] safer, the plaintiffs would be in the same position they occupy now." *Id.* at 320.

The same is true for Mr. Edwards. He purchased a ticket to see a documentary, and received the benefit of his bargain when he watched that documentary. The fact that he did not like the documentary, and disagreed with its point of view, is of no legal import. Nor is his claimed injury that "instead of going to the United States Treasury [his funds] have instead wrongly been conveyed to certain named Defendants." FAC ¶ 41. Mr. Edwards would be in the same economic position regardless of whether the funds had gone to the U.S. Treasury or not—

once Mr. Edwards relinquished his interest in those funds, their ultimate disposition could not be an injury in fact *to him*. *See Hoopa Valley Tribe v. U.S.*, 597 F.3d 1278, 1283–84 (Fed. Cir. 2010) (no injury in fact to Indian tribe that received its portion of settlement fund, even if remainder of fund was improperly distributed).

And, tellingly, the remedy Mr. Edwards seeks—even if granted—would not redress his claimed "economic injury." *See Warth*, 422 U.S. at 508 (no standing unless plaintiff "personally would benefit in a tangible way from the court's intervention"). Indeed, only the United States would benefit from the remedy Mr. Edwards seeks. Any claimed "economic injury" would remain, thereby illustrating there is no "economic injury" to redress.

### 2.    Plaintiff's Generalized Grievance Regarding Injury to the American People is Insufficient for Standing.

The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan* 540 U.S. at 573–74; *see also Carpenter*, 463 F.3d at 1137.

Mr. Edwards' allegation that "Plaintiff as well as others [*sic*] similarly situated individuals and the American people as a whole . . . have been exposed to harm by the breach of all Defendants in that the instability caused within the United States and abroad has jeopardized their safety and security," FAC ¶¶ 54, 64, is precisely the type of generalized grievance insufficient to establish standing. *See Strunk v. Obama*, 880 F. Supp. 2d 1, 4 (D. D.C. 2011) (dismissal for lack of standing when claimed injury was "a national security dilemma that will harm [plaintiff] and similarly situated individuals"); *U.S. v. Walli*, No. 12-cr-107, 2013 WL 1837152, at *5–6 (E.D.

Tenn. Jan. 2, 2013) (no standing when claimed injury was "nuclear weapons [] constitut[e] a threat of harm to all persons indiscriminately").

### 3.   Plaintiff is Not Within the Zone of Interest of Any Law Alleged.

Mr. Edwards also cannot create standing when none exists by merely declaring "he falls within the zone of interest in a derivative action on behalf of the American Public to support and enforce a constructive trust by the United States Government." FAC ¶ 42. As explained below, *infra* Part C.2, there is no "derivative action on behalf of the American Public to support and enforce a constructive trust by the United States Government." As such, Mr. Edwards does not fall within any zone of interest protected by an actual law.

### C.   Plaintiff Fails to State a Claim Upon Which Relief May be Granted.

Mr. Edwards purports to bring two claims, one for "Constructive Trust for Breach of Fiduciary Duty" and another for "Constructive Trust for Breach of Fiduciary Duty as to the United States of America." *See* FAC, Counts I–II. It is difficult to ascertain the factual or legal bases for these claims, however, as he fails to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This alone is grounds for dismissal. Mr. Edwards appears to bring claims for breach of fiduciary duty *against Mr. Snowden* (who is not a party to this motion) and for aiding and abetting that breach of fiduciary duty *against the Documentary Film Defendants. See* FAC ¶¶ 46–54. Yet, Mr. Edwards fails to allege any facts plausibly suggesting Mr. Snowden owed him any fiduciary duty, and there can be no cause of action for breach of a fiduciary duty without such a duty being owed. And without a viable breach action against Mr. Snowden, there can be no viable aiding and abetting action against the Documentary Film Defendants.

In his First Amended Complaint, Mr. Edwards purports to bring these claims both on behalf of himself and others similarly situated, and "on behalf of the U.S. Government, akin to a derivative action." FAC ¶ 8. He also seeks to add the United States as an involuntary plaintiff, and to bring this suit directly on behalf of the United States. FAC ¶¶ 3, 56–64. But a private plaintiff cannot bring a cause of action for breach of fiduciary duty on behalf of the United States and Mr. Edwards has no legal basis for joining the United States as an involuntary plaintiff.

### 1.      Plaintiff Fails to Allege Breach of any Fiduciary Duty Owed to Him.

To state a claim for breach of fiduciary duty,[6] a plaintiff must allege (1) the existence of a fiduciary relationship owed to the plaintiff by the defendant, and (2) a breach of that duty resulting in harm to the plaintiff. *See* Restatement (Second) of Torts § 874 (1977) ("One standing in a fiduciary relation with another is subject to liability *to the other* for harm resulting from a breach of duty imposed by the relation") (emphasis added); *Galena St. Fund, L.P. v. Wells Fargo Bank, N.A.*, No. 12-cv-00587, 2013 WL 2114372, at *12 (D. Colo. May 15, 2013). It is axiomatic that there can be no cause of action for breach of fiduciary duty when a plaintiff is not owed a fiduciary duty; and if Mr. Snowden did not owe a fiduciary duty to Mr. Edwards, then there can be no breach of such a duty and there is nothing for the Documentary Film Defendants to aid and abet.

---

[6] Mr. Edwards alleges he is bringing a claim for "federal common law breach of fiduciary duty." FAC ¶ 9. For purposes of this motion, the Documentary Film Defendants assume federal common law controls. Indeed, the legal consequences of a breach of a fiduciary relationship that exists by virtue of a contract or employment relationship with the United States is likely "an area of uniquely federal interest" subject to federal common law. *See Boyle v. United Technologies Corp.*, 487 U.S. 500, 506–07 (1988). "In determining the content of federal common law, a court is free to choose any rule it deems appropriate, and it may look for guidance to other federal contexts, to what it perceives to be first principles, to considerations of equity and convenience, or to the law of the forum state." 19 Wright & Miller, Federal Practice and Procedure § 4514 (2d ed.). Because the Documentary Film Defendants are aware of no case establishing federal common law on aiding and abetting breach of fiduciary duty (and Mr. Edwards has cited to none), these claims are addressed with reference to general principles and the common law of the forum state.

*See, e.g. Sheffield Steel Corp. v. HMK Enters. (In re Sheffield Steel Corp.),* 320 B.R. 405, 420 (Bankr. N.D. Okla. 2004); *Miller v. Staab*, No. 91,931, 2005 WL 1429834, at *5 (Kan. Ct. App. Jun. 17, 2005).

The only case cited by Mr. Edwards as purported authority for his breach of fiduciary duty claims, *Snepp v. United States*, highlights the types of facts that could give rise to a fiduciary relationship, none of which Mr. Edwards has pleaded. 444 U.S. 507 (1980). In that case, the Supreme Court relied on the existence of a contract *between the parties* and the nature of their employment relationship to find that a fiduciary relationship existed between defendant Snepp and his employer, the United States. *Id.* at 510. The Court found that "Snepp's employment with the CIA involved an extremely high degree of trust," and that the "nature of Snepp's duties" established a "trust relationship." *Id.* at 510, 510 n. 5, 511 n.6.

Here, Mr. Edwards had not pleaded *any* facts regarding *any* relationship between himself and Mr. Snowden, much less facts plausibly suggesting the existence of a fiduciary relationship between them. Nor can he. Mr. Edwards did not employ Mr. Snowden. He did not enter into any contracts with Mr. Snowden. And he did not entrust Mr. Snowden with any confidential information.[7] His claim for breach of fiduciary duty as to him personally therefore must fail. *See, e.g.*, *Cruz v. United States*, 219 F. Supp. 2d 1027, 1040 (N.D. Cal. 2002); *Burton v. Countrywide*

---

[7] Apparently cognizant of this legal shortcoming, Mr. Edwards suggests he is somehow a "third party beneficiary of any relevant agreement[s]" between Mr. Snowden and the U.S. Government. FAC ¶ 43. However, he has not alleged any facts supporting this conclusory allegation. In fact, the sample secrecy agreement he cites explicitly provides that it is the "United States Government" that is entitled to enforce it, not any third-party beneficiary, and certainly not Mr. Edwards. FAC Ex. I ¶ 12. Moreover, for any such relationship to be established, "the intent to benefit the third-party must be clearly expressed in the contract." *U.S. v. United Serv. Auto Ass'n.*, 968 F.2d 1000, 1002 (10th Cir. 1992). There is no reference whatsoever to third parties in the sample agreement plaintiff submits. Therefore, this allegation also fails to establish that Mr. Snowden owed anyone (except perhaps the United States) a fiduciary duty.

*Bank, FSB*, No. 10-cv-00298-EJL-LMB, 2012 WL 976151, at *5–7 (D. Idaho Mar. 1, 2012); *Wheat v. Lee*, No. C-12-6299, 2013 WL 2285174, at *13 (N.D. Cal. May 23, 2013).

Since Mr. Edwards is unable to state facts showing the existence of a fiduciary relationship between Mr. Snowden and himself, his claim against the Documentary Film Defendants for aiding and abetting a breach of that duty must also fail.

### 2.    Plaintiff Cannot Sue on Behalf of the United States.

Mr. Edwards cites no statute or other authority granting him a right to sue "on behalf of the U.S. Government, akin to a derivative action," FAC ¶ 8, or any statute or authority that allows him "to add the United States" as a party.  FAC ¶ 3.  Congress provided that "[e]xcept as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General."  28 U.S.C. § 516. Mr. Edwards' inability to point to any such law or authority that permits an exception to this rule is fatal to his so-called "derivative" claims.

### (1)    Plaintiff Cannot Create by Analogy a New Cause of Action on Behalf of the United States.

Lacking any statutory authority to bring a so-called "derivative action," Mr. Edwards attempts to do so by analogy.  However, his analogy is off—a suit asserting rights on behalf of the U.S. Government is not a "derivative suit," but rather a *qui tam* action.  In a *qui tam* action, a private plaintiff sues as "a partial assignee of the United States."  *Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 774 n.4 (2000).  This is precisely what Mr. Edwards attempts to do here.

However, as courts have long recognized, there is "no common-law right to bring a *qui tam* action, which is strictly a creature of statute." *United Seniors Ass'n, Inc. v. Philip Morris USA*, 500 F.3d 19, 23 (1st Cir. 2007); *see also Stalley ex rel. U.S. v. Orlando Regional Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008). Mr. Edwards' failure to identify a statutory basis for his right to sue on behalf of the United States precludes his claim.

Mr. Edwards does not identify any such basis because none exists. In *Vermont Agency*, the Supreme Court identified the four *qui tam* statutes that "remain on the books." 529 U.S. at 768 n.1.[8] None of these statutes even come close to authorizing a *qui tam* claim for breach of fiduciary duty owed to the U.S., so Mr. Edwards' "derivative action" claim must also be dismissed.

> **(2)     Plaintiff Cannot Add the United States as an Involuntary Plaintiff.**

Furthermore, Mr. Edwards' attempt to join the United States as an involuntary plaintiff fails because he does not meet the requirements for involuntary joinder.   A party may only be added as an in "involuntary plaintiff" in a "proper case." Fed. R. Civ. P. 19(a)(2). The "proper case" is when: "1) the party to be joined has an obligation to permit its name or title to be used to protect rights asserted in the action; 2) is beyond the jurisdiction of the court; and 3) has refused to voluntarily join in the action following notification thereof." *Sheldon v. W. Bend Equip.*

---

[8] The most well-known of these statutes is the False Claims Act, 31 U.S.C. §§ 3729–3733, which authorizes suit on behalf of the United States against any individual who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a).  "Three other qui tam statutes, all also enacted over 100 years ago, remain on the books. *See* 25 U.S.C. § 81 (providing cause of action and share of recovery against a person contracting with Indians in an unlawful manner); § 201 (providing cause of action and share of recovery against a person violating Indian protection laws); 35 U.S.C. § 292(b) (providing cause of action and share of recovery against a person falsely marking patented articles)." *Vermont Agency,* 529 U.S. at 768 n.1.

*Corp.*, 718 F.2d 603, 606 (3rd Cir. 1983); *see also Jordan Patterson Post v. Chaffee*, 103 F.R.D. 523, 525-26 (D. Kan. 1984). Here, Mr. Edwards has alleged no special relationship with the United States. He also has not alleged that the United States is beyond the jurisdiction of this Court, nor has he alleged that the United States received notification of this action and refused to join. Therefore, Claim II of the First Amended Complaint must be dismissed.

## D.   *CITIZENFOUR* is Protected by the First Amendment.

Even if Mr. Edwards could somehow state a claim for aiding and abetting Mr. Snowden's breach of fiduciary duty (and he cannot), that claim would violate the Documentary Film Defendants' First Amendment rights. Mr. Edwards appears to claim that Documentary Film Defendants aided and abetted breaches of fiduciary duty by Mr. Snowden in two distinct ways. *First*, regarding Ms. Poitras, he alleges she aided and abetted Mr. Snowden's breach of fiduciary duty by meeting with him in Hong Kong and "accepting all of the purloined information to use for her personal benefit financially and professionally . . . acknowledging that she has the right to possess and control stolen classified digital information belonging to the U.S. government and to parlay that information into profit. . . ." FAC ¶ 4. However, as the Supreme Court has repeatedly held, the First Amendment protects publication of truthful information on a matter of public interest, even if it was obtained through unauthorized means by a third party. *Second*, regarding all Documentary Film Defendants, he alleges they aided and abetted Mr. Snowden's breach of fiduciary duty by taking "the original film footage of Defendant Snowden's Hong Kong admissions and cloak[ing] Defendant Snowden's illegal acts in the guise of righteousness and virtue." FAC ¶ 5. In other words, Mr. Edwards alleges the act of producing and distributing a documentary that depicted Mr. Snowden favorably (or not as negatively as Mr. Edwards thought warranted) *is* itself aiding and abetting Mr. Snowden's breach of fiduciary duty. However, the First Amend-

ment forbids the punishment of any particular viewpoint.  Therefore, under any theory of "aiding

and abetting," the First Amendment protects the Documentary Film Defendants' speech here.

### 1. Publication of Truthful Information on a Matter of Public Interest is Protected, Regardless of How it was Obtained by a Third Party.

The Supreme Court has repeatedly held that the publication of truthful information on a

matter of public interest is protected by the First Amendment—even if it was an unauthorized

disclosure by a third party—unless punishing the expression furthers a compelling government

interest. *See Bartnicki v. Vopper*, 532 U.S. 514, 535 (2001).  Here, there is no allegation that the

information disclosed by Mr. Snowden was not truthful, and it is unquestionably a matter of pub-

lic interest.[9]  Indeed, Mr. Snowden's revelation of a massive, secret government surveillance

program targeting American citizens is precisely the type of criticism of government at the very

heart of First Amendment protections.  *See, e.g., Mills v. Alabama*, 384 U.S. 214, 219 (1966)

("Suppression of the right of the press to praise or criticize governmental agents . . . muzzles one

of the very agencies the Framers of our Constitution thoughtfully and deliberately selected to

improve our society and keep it free").

In *Bartnicki,* the Supreme Court explicitly found that publication of truthful information

is protected, even if it was obtained without authorization by a third party.  532 U.S. at 535.

There, a radio station played a tape of a private cellular conversation regarding collective-

bargaining negotiations, which was recorded by a third party without the speakers' knowledge or

consent.  *Id.* at 519.  The two individuals speaking on the tape brought a civil suit against the

radio station under both federal and state wiretapping laws.  *Id.* at 519–20.  The Court held that

---

[9] In the context of the First Amendment, a matter is of public interest when it is "a subject of general interest and of value and concern to the public at the time of publication."  *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1185 (10th Cir. 2007).

"a stranger's illegal conduct does not suffice to remove the First Amendment shield from speech about a matter of public concern." *Id.* at 535. *See also Landmark Communications v. Virginia*, 435 U.S. 829, 838 (1978) (government could not constitutionally punish newspaper for publishing article disclosing information lawfully gathered from a third party).

Because Mr. Edwards does not allege there was anything unlawful about Ms. Poitras's receipt of classified documents from Mr. Snowden, publication of that information may not be punished without proof of a compelling government interest. *Smith v. Daily Mail*, 443 U.S. 97, 101–02 (1979) ("[A] sanction for punishing lawfully obtained, truthful information . . . requires the *highest form of state interest* to sustain its validity") (emphasis added). As *Bartnicki* makes clear, however, when a criminal or civil remedy exists to deter an initial breach of confidentiality, the limited value of additional deterrence achieved by punishing publication is not compelling. *Bartnicki*, 532 U.S. at 529–30 ("It would be quite remarkable to hold that speech by a law-abiding possessor of information can be suppressed in order to deter conduct by a non-law-abiding third party").

### 2. The First Amendment Forbids Punishing Expression Based on Content.

The Supreme Court has also made clear that objections on the basis of a work's content, or disagreement with its point of view or portrayal of events, cannot give rise to a legitimate legal action punishing speech. The government has "no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 573 (2002). Although one may disagree with how a story is told, "[t]he First Amendment stands against attempts to disfavor certain subjects or viewpoints." *Citizens United v. Federal Election Com'n*, 558 U.S. 310, 340 (2010); *see also Street v. New York*, 394 U.S. 576, 592

(1969) ("It is firmly settled that under our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers"); *Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*, 502 U.S. 105, 115–116 (1991) (statute violates First Amendment when it "plainly imposes financial disincentive only on speech of a particular content").  To the extent Mr. Edwards alleges the Documentary Film Defendants "aided and abetted" Mr. Snowden's breach of fiduciary duty because *CITIZENFOUR* depicts him favorably, such an argument runs counter to the First Amendment's protection.  *See* FAC ¶ 3 ("Citizenfour portrays Defendant Snowden as a well-meaning whistleblower . . . when in fact the film glorifies international espionage for profit").

Moreover, no compelling government interest could be furthered by punishing the release of *CITIZENFOUR* based on its content.   Here, Mr. Edwards invokes vague claims that "U.S. national security has been seriously damaged, human lives placed at risk or worse, and military and non-military assets compromised"  because of *CITIZENFOUR*.  FAC ¶ 7.  Such conclusory allegations are precisely the type of allegations discredited in *Iqbal*.   "A pleading that offers labels and conclusions or formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   In any case, courts have held "the mere invocation of 'national security' or 'government secrecy' does not foreclose a First Amendment inquiry." *U.S. v. Rosen*, 445 F. Supp. 2d 602, 630 (2006).  *See also U.S. v. Morison*, 844 F. 2d 1057, 1081 (4th Cir. 1988) (Wilkinson, J., concurring) ("First Amendment interest in informed popular debate does not simply vanish at the invocation of the words 'national security'").  Indeed, the justification for limiting free speech "must be 'far stronger than mere speculation about serious harms.'" *Bartnicki*, 532 U.S. at 532.

**3.     A Constructive Trust Violates the First Amendment Even if No Prior Restraint Occurs.**

Finally, Mr. Edwards attempts to sidestep the First Amendment by seeking a constructive trust, rather than an injunction prohibiting distribution of CITIZENFOUR.  In fact, Mr. Edwards goes so far as to allege that the constructive trust remedy he seeks "does not infringe upon First Amendment rights but maintains a reasonable balance between national security and the fundamental Constitutional protections of Freedom of the Press.  No censorship occurs and no public access is restrained."  FAC ¶ 1.  However, as the Supreme Court has made clear, the constitutional protections of the First Amendment are not so easily subverted, and reach far "beyond prior restraints."  *See Daily Mail,* 443 U.S. at 101.  Indeed, the Supreme Court has held that even a modest use tax on "the cost of paper and ink products consumed in the production of a publication" violates the First Amendment, although it does not directly restrain speech.  *Minneapolis Star and Tribune Co. v. Minnesota Com'r of Revenue,* 460 U.S. 575, 577 (1983).  In doing so, the Court reasoned that even the threat of increased taxation targeted at the press "can operate as effectively as a censor to check critical comment by the press, undercutting the basic assumption of our political system that the press will often serve as an important restraint on government."  *Id.* at 585.  Applying the "constructive trust" remedy to journalists as Mr. Edwards suggests would have the same effect, because the threat of seizure of any funds derived from a work would operate just as effectively as a use tax to check critical comments by the press on issues of public interest.

And, of course, as the Supreme Court's decision in *New York Times v. United States*—in which the Court allowed the publication of the classified *Pentagon Papers*—makes clear, any ban on publication of the classified information provided by Mr. Snowden is constitutionally

prohibited. 403 U.S. at 714. Because the requested constructive trust is nothing more than a disguised attempt to enjoin the continued showing of *CITIZENFOUR*, it is constitutionally imper-missible.

## IV.  CONCLUSION.

For the foregoing reasons, Mr. Edwards' First Amended Complaint should be dismissed.

Respectfully submitted,

LATHROP & GAGE, LLP

By:  /s/Bernard J. Rhodes
    Bernard J. Rhodes    KS #15716
    2345 Grand Blvd., Suite 2400
    Kansas City, MO  64108
    Tel:    (816) 292-2000
    Fax:    (816) 292-2001
    Email:  brhodes@lathropgage.com

    Attorneys for Defendants Praxis Films, Inc., Laura Poitras, Participant Media LLC, Diane Weyermann, Jeffrey Skoll, and The Weinstein Company LLC

Of Counsel:

Marvin S. Putnam (Cal. Bar No. 212839)
(admitted *pro hac vice*)
Daniel D. Ambar (Cal. Bar No. 278853)
(admitted *pro hac vice*)
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067
Tel:    (310) 246-8480
Fax:    (310) 246-6779
Email:  mputnam@omm.com
        dambar@omm.com

# CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served via the Court's ECF System this 10th day of February, 2015 on the following:

Jean Lamfers
Lamfers & Associates, L.C.
7003 Martindale
Shawnee, KS  66218

/s/Bernard J. Rhodes
**Attorney for Defendants Praxis Films, Inc.,
Laura Poitras, Participant Media, LLC,
Diane Weyermann, Jeffrey Skoll, and The
Weinstein Company LLC**