# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **HORACE B. EDWARDS, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **Case No. 14-cv-02631-JAR-TJJ** |
| ) | |
| **EDWARD JOSEPH SNOWDEN, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

# DEFENDANTS' MEMORANDUM IN OPPOSITION TO
# PLAINTIFF'S MOTION TO FILE A SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

**Page**

I. Factual and Procedural Background. ................................................................... 1

II. Leave to Amend Should be Denied Because Amendment
Would be Futile. .................................................................................................. 6

III. The Proposed Amendments Fail to Redress Mr. Edwards'
Lack of Standing. ................................................................................................. 7

IV. Mr. Edwards Cannot State a Claim Under the Anti-Terrorism Act. ................... 10

V. No Allegations Establish a Fiduciary Duty Owed to Mr. Edwards,
or Identify a Cause of Action Allowing Mr. Edwards to Sue on
Behalf of the United States. ................................................................................ 12

VI. Conclusion. ......................................................................................................... 13

## TABLE OF AUTHORITIES

Page

**Cases**

*Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
  521 F.3d 1278 (10th Cir. 2008) ................................................................................. 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 6

*Boim v. Holy Land Found. for Relief & Dev.*,
  549 F.3d 685 (7th Cir. 2008) .................................................................................. 11

*Briglia v. Horizon Healthcare Servs., Inc.*
  No. CIV.A.03-6033NLH, 2007 WL 1959249 (D.N.J. July 3, 2007) ........................... 10

*Campbell v. Gaither,*
  No. 3:11-CV-190-FDW-DSC, 2011 WL 1838779 (W.D.N.C. May 13, 2011) ........... 10

*Clapper v. Amnesty International USA*,
  133 S. Ct. 1138 (2013) .................................................................................... 8, 9, 10

*Full Life Hospice, LLC v. Sebelius*,
  709 F.3d 1012 (10th Cir. 2013) ................................................................................. 6

*Griffin v. Oceanic Contractors, Inc.*,
  458 U.S. 564 (1982) ................................................................................................ 12

*In re McGough*,
  737 F.3d 1268 (10th Cir. 2013) ............................................................................... 12

*Kan. Penn Gaming, LLC v. Collins*,
  656 F.3d 1210 (10th Cir. 2011) ................................................................................. 6

*Licci ex rel. Licci v. Lebanese Canadian Bank,
  SAL*, 732 F.3d 161 (2d Cir. 2013) ........................................................................... 11

*Metro-North Commuter R. Co. v. Buckley*,
  521 U.S. 424 (1997) ................................................................................................ 11

*Morris v. Khadr*,
  415 F. Supp. 2d 1323 (D. Utah 2006) ................................................................. 11-12

*Pedro v. Armour Swift-Eckrich*,
  118 F. Supp. 2d 1155 (D. Kan. 2000) ........................................................................ 6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*S.E.C. v. Shields*,
  744 F.3d 633 (10th Cir. 2014) .................................................................................... 6

*Southern Utah Wilderness Alliance v. Palma*,
  707 F.3d 1143 (10th Cir. 2013) .................................................................................. 7

*U.S. v. Holy Land Found. for Relief & Dev.*,
  722 F.3d 677 (5th Cir. 2013) .................................................................................... 11

*Urie v. Thompson*,
  337 U.S. 163 (1949).................................................................................................. 11

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990).................................................................................................... 8

**Statutes**

18 U.S.C. § 2333 .................................................................................................. 5, 10-11

50 U.S.C. § 1881a ....................................................................................................... 8

**Rules**

Rule 12(b)(6) ............................................................................................................... 6

Plaintiff Horace Edwards' motion to file a Second Amended Complaint against the Documentary Film Defendants[1] should be denied because the proffered amendments fail to address the fundamental deficiencies raised in defendants' motion to dismiss his First Amended Complaint, and because the new causes of action he seeks to now add are unsupported by the law or the facts of this case.  It is time to end Mr. Edwards' wholly frivolous legal machinations, which are meant only to harass the Documentary Film Defendants for exercising their First Amendment rights and otherwise chill them from further exercising those rights.

## I.     Factual and Procedural Background.

In each of its iterations, this lawsuit involves Mr. Edwards' myriad attempts to punish the Documentary Film Defendants for their involvement in making, producing, or distributing the documentary *CITIZENFOUR*.

On December 19, 2014, Mr. Edwards filed his original complaint in this action. There, he brought a single claim for breach of fiduciary duty against Edward Snowden, and claims for aiding and abetting against the Documentary Film Defendants.  *See* ECF No. 1, Complaint ("Compl.") at ¶¶ 44–53.  Mr. Edwards alleged that Mr. Snowden had entered into a secrecy agreement with the United States government and that

---

[1] Mr. Edwards' First Amended Complaint named Praxis Films, Inc., Laura Poitras, Participant Media, LLC, Diane Weyermann, Jeffrey Skoll, The Weinstein Company LLC (collectively, the "Documentary Film Defendants"), and Edward Snowden as defendants. *See* ECF No. 1; ECF No. 3.  Mr. Snowden is not a party to the Documentary Film Defendants' motion to dismiss the First Amended Complaint or this opposition to Plaintiff's motion to file a Second Amended Complaint.

Mr. Edwards' proposed Second Amended Complaint seeks to add HBO, along with its Documentary President, Sheila Nevins, and the Academy of Motion Picture Arts and Sciences as defendants.  ECF No. 19-2 ¶¶ 18–20.  HBO, Nevins and the Academy are not parties to this motion, although the arguments against further amendment are equally applicable to them.

Mr. Snowden owed a fiduciary duty to the United States by virtue of that agreement and Mr. Snowden's employment with the CIA/NSA/DIA. *Id.* ¶¶ 44–46. He alleged he was injured because: (1) as a result of Mr. Snowden's breach of fiduciary duty, "the United States has been damaged, *inter alia*, by the undermining of confidence and trust in [its] intelligence agencies," *id.* ¶ 49; (2) he, along with all the American people, were "exposed to harm . . . in that the instability caused within the United States and abroad has jeopardized their safety and security," *id.* ¶ 52; and (3) he "paid to see Citizenfour" and in doing so "expended funds that instead of going to the United States Treasury have instead wrongly been conveyed to certain named Defendants." *Id.* ¶ 39. Mr. Edwards purported to bring his claims "in both his individual capacity and as a representative of other similarly situated Plaintiffs" and "on behalf of the United States of America in the nature of a private attorney general, under theories of derivative action, as well as a third party beneficiary of any relevant agreement[s] Defendant Snowden executed." *Id.* ¶ 41.

On January 13, 2015, Mr. Edwards filed his First Amended Complaint. *See* ECF No. 3, First Amended Complaint ("FAC"). Without adding any new factual allegations, Mr. Edwards added a second claim for breach of fiduciary duty (and aiding and abetting) on behalf of the United States as an involuntary plaintiff. *Id.* ¶¶ 56–64.

On February 10, 2015, the Documentary Film Defendants moved to dismiss the First Amended Complaint. *See* ECF No. 13. They argued that Mr. Edwards: (1) failed to meet his burden to demonstrate that venue is proper in Kansas, because he did not allege that defendants did *anything* in Kansas, ECF No. 14 at 10–11; (2) failed to meet his burden to demonstrate that he had standing to sue, because he did not allege any true economic injury and his allegations regarding damage to national security were insuffi-

2

cient to establish standing, *id.* at 12–15; (3) alleged no facts supporting the existence of a fiduciary duty owed to him or anyone else other than the United States and its agencies, *id.* at 15–18; (4) failed to identify a statutory basis for his so-called "derivative action" on behalf of the United States, *id.* at 18–19; (5) failed show that the United States could be added as an involuntary plaintiff, *id.* at 19–20; and (6) failed to allege any compelling government interest that would allow his claims to proceed without violating the Documentary Film Defendants' well-established First Amendment Rights. *Id.* at 20–25. Regarding the First Amendment, the Documentary Film Defendants explicitly stated that the "Court need not reach these constitutional issues" because Mr. Edwards did not otherwise state a cognizable legal claim. *Id.* at 7. In conjunction with their motion to dismiss, the Documentary Film Defendants filed with the Court a copy of *CITIZENFOUR* and a transcript of the same. *See* ECF Nos. 13-1 & 18.

On February 14, 2015, Mr. Edwards filed a motion for leave to file his proposed Second Amended Complaint. *See* ECF No. 19. Mr. Edwards' proposed Second Amended Complaint drops the United States as an involuntary plaintiff (and the associated cause of action). *See* ECF No. 19-2, Second Amended Complaint ("SAC"). While the proposed Second Amended Complaint includes no new allegations establishing a fiduciary duty owed to Mr. Edwards, nor any statue granting Mr. Edwards the right to sue as a private attorney general for breaches of fiduciary duty owed to the United States, it nevertheless retains a claim for breach of fiduciary duty. *Id.* ¶¶ 86–91.[2]

---

[2] The proposed Second Amended Complaint also does not address the venue defects in Mr. Edwards' First Amended Complaint as to his claim for breach of fiduciary duty. To the contrary, it underscores those defects, affirmatively stating—in specifically referring to the Documentary Film Defendants—that "[t]heir acts in filming and editing the film occurred primarily outside the territorial jurisdiction of the United States." *Id.* ¶ 33.

3

The proposed Second Amended Complaint, however, omits all allegations regarding Mr. Edwards' supposed "economic injury" due to his purchase of a ticket to see *CITIZENFOUR*. *See* SAC. Instead, it alleges that *CITIZENFOUR*'s disclosures of what it avers "upon information and belief" is "stolen classified information," *id*. at ¶ 31, "constitute an act dangerous to human life, causing harm to plaintiff and others by exposing them to an increased substantial risk of serious bodily injury." *Id.* ¶ 32. Specifically, Mr. Edwards alleges that "in the few months after Snowden's June 2013 classified information releases," terrorist groups increased their use of encryption, making it "much more difficult [for] the United States and its allies . . . to intercept al-Qaeda terrorist splinter groups communications." *See id.* ¶ 33. As a result, Mr. Edwards alleges, he "has been harmed thereby in his person, property and business interests by the substantial increase in risk caused by these breaches and the casual chains that result in tangible harm from such increased risk." *Id*.

The proposed Second Amended Complaint also alleges that the Documentary Film Defendants committed insurance fraud in procuring errors and omissions insurance for the film. Specifically, it alleges that "[b]ased on information and belief, a national insurance company issued E&O insurance for the film despite the film's inclusion of purloined classified information." *Id*. ¶ 39. It is unclear exactly how defendants are alleged to have committed this fraud against "a national insurance company," for the Second Amended Complaint specifically alleges that "[t]he use of stolen information in this particular commercial film should be obvious even upon a cursory review, given Snowden's notoriety, especially to insurance professionals who are in the business of assessing risk." *Id*. ¶ 40.

4

Nevertheless, the Second Amended Complaint alleges that the Documentary Film Defendants' fraudulent procurement of insurance constitutes a violation of the Anti-Terrorism Act of 1990, 18 U.S.C. § 2333, *et seq*. *See id*. ¶ 44. Specifically, it alleges that "[t]he conduct of the defendants . . . places their conduct within the express provisions of the A[nti-]T[errorism] A[ct] in conjunction with the underlying claim of insurance fraud." *Id.* It further alleges that as a result of defendants' alleged insurance fraud, "[d]amages were sustained by plaintiff … in the amount of up to $100 Billion Dollars." *Id*. ¶ 70.

In addition to claims stemming from the Documentary Film Defendants' alleged insurance fraud, the Second Amended Complaint asserts other violations of the Anti-Terrorism Act. Specifically, the proposed pleading alleges that in releasing *CITIZENFOUR*, defendants—through "plot and dialect," *id*. ¶ 66—"intended to intimidate or coerce a civilian population or to influence the policy of the United States government by intimidation or coercion of its governmental authorities through misuse of stolen property given to enemies of the United States." *Id. ¶¶* 64-67. Mr. Edwards further alleges that defendants did this "by overt and covert references to highly classified national security information allegedly in their possession or under their control, along with asserting negative connotations from purported cooperation between and among international governments, all as contained within the purloined information." *Id. ¶* 64.

Mr. Edwards goes on to allege that "[t]hese actions are acts dangerous to human life because the repetitious disclosure of classified information, the implicit threats to the United States government, and the revealing of locations associated with points of transfer of national intelligence at international borders gives rise to a substantial increase in

5

the serious risk to human life, including plaintiff's life, by enemies of the United States, known to engage in international terrorism, taking advantage of such knowledge to the detriment of our intelligence and military forces and private business interests." *Id. ¶* 66.

## II.   Leave to Amend Should be Denied Because Amendment Would be Futile.

While leave to amend a complaint is freely given, a court rightly refuses to allow such amendment when it would be futile. *See Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013); *see also Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008) ("The district court is not required to grant leave to amend, however, if amendment would be futile"). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Full Life*, 709 F.3d at 1018. In deciding whether a proposed amendment is futile, a court uses "the same analysis as . . . a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Pedro v. Armour Swift-Eckrich*, 118 F. Supp. 2d 1155, 1158 (D. Kan. 2000).

In making such a determination, it is well-settled that "[a] pleading that offers labels and conclusions or formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) ("Thus, mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim"). "Making that determination 'requires the reviewing court to draw on its judicial experience and common sense.'" *S.E.C. v. Shields*, 744 F.3d 633, 641 (10th Cir. 2014).

Against this backdrop, it should be noted that the Second Amended Complaint uses the phrase "upon information and belief" over fifty times. *See* SAC ¶¶ 9, 11-21, 31,

36, 38, 45, 50, 53-62, 69-79, 77, 79-83, 85.  The reason for this is obvious:  Mr. Edwards has no personal knowledge—or involvement—whatsoever in the events upon which he bases his frivolous claims.  In fact, a close examination of Mr. Edwards' proposed Second Amended Complaint reveals that it contains no allegations of any sort concerning himself, other than that he "is and was at all times relevant hereto a United States citizen residing in Kansas."  SAC ¶ 10.[3]

### III.  The Proposed Amendments Fail to Redress Mr. Edwards' Lack of Standing.

In his First Amended Complaint, Mr. Edwards alleged that he suffered an "economic injury" because he bought a ticket to see *CITIZENFOUR and saw it*.  FAC ¶¶ 41–42.  The Documentary Film Defendants moved to dismiss because such supposed injury, *inter alia*, does not provide Mr. Edwards with the required standing to bring suit.  In response, Mr. Edwards now proposes to drop entirely this claim of injury from his Second Amended Complaint.  Mr. Edwards, instead, would substitute allegations that he somehow faces an "increased risk of terrorist acts causing serious bodily injury."  SAC ¶ 43; *see also* SAC ¶¶ 9, 12, 33, 63, 73.  As supposed support for this claimed injury, Mr. Edwards cites reports that "quantify the effects on terrorist organization's improvements in their encryption systems in the few months after Snowden's June 2013 classified information releas-

---

[3] While both Mr. Edwards' original complaint and his First Amended Complaint referred to himself as a former Secretary of KDOT, a retired naval officer who held something he called a "Q" security clearance, and the former president of two private engineering firms, *see* Compl. ¶ 2; FAC ¶ 2, those allegations have been stripped from his Second Amended Complaint.  *See* SAC.  In this regard, it should be noted that "[w]here, as here, the original complaint has been superceded by an amended complaint, we examine 'the amended complaint in assessing a plaintiff's claims.'"  *Southern Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1152 (10th Cir. 2013).

7

es."[4]  SAC ¶ 33.  He also claims that he is presently harmed in the amount of "$100 Billion Dollars" because of some amorphous insurance fraud by the Documentary Film Defendants that somehow renders the documentary's E&O insurance void.  SAC ¶ 43.[5]

Neither of these new-found "injuries" gives rise to an Article III case or controversy, as clear precedent from the Supreme Court illustrates.  Any actual injury to Mr. Edwards is entirely speculative and *not* "certainly impending," as required.  In *Clapper v. Amnesty International USA*, 133 S. Ct. 1138, 1142 (2013), plaintiffs were individuals "whose work . . . requires them to engage in sensitive international communications with individuals who they believe are likely targets of surveillance under [50 U.S.C.] § 1881a."  The statute allows warrantless wiretapping "of individuals who are not 'United States persons' and are reasonably believed to be located outside the United States."  *Id.*  Plaintiffs brought a constitutional challenge, seeking an injunction prohibiting surveillance; they argued they had standing "because there is an objectively reasonable likelihood that their communications will be acquired under § 1881a at some point in the future."  *Id.* at 1143.

The Supreme Court disagreed, holding that plaintiffs' "theory of *future* injury is too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending.'"  *Id.* at 1143 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).  The Court explained:

---

[4] The Second Amended Complaint does not explain how the exhibition of the documentary *CITIZENFOUR*—which did not premiere until October of 2014, *see* ECF No. 19-11—could have conceivably caused terrorists to change their encryption techniques a year before, "in **the few months after Snowden's June 2013** classified information releases." *Id*. ¶ 33 (emphasis added).

[5] The Second Amended Complaint does not allege that Mr. Edwards has made an insurance claim of any kind to anyone, nor does it contain any explanation for how Mr. Edwards could possibly be entitled to any insurance proceeds at present.

8

> [Plaintiff's] argument rests on their highly speculative fear that: (1) the Government will decide to target the communications of non-U.S. persons with whom they communicate; (2) in doing so, the Government will choose to invoke its authority under § 1881a rather than utilizing another method of surveillance; (3) the Article III judges who serve on the Foreign Intelligence Surveillance Court will conclude that the Government's proposed surveillance procedures satisfy § 1881a's many safeguards that are consistent with the Fourth Amendment; (4) the Government will succeed in intercepting the communications of respondents' contacts; and (5) respondents will be parties to the particular communications that the Government intercepts.

*Id.* at 1148. The same "high speculative fear" exists here..

Even assuming *arguendo* that *CITIZENFOUR* released previously undisclosed classified information that could allow terrorists to more easily evade detection by the government (and it does not):[6] (1) the terrorists would still have to independently decide to target Mr. Edwards or some location where he is likely to be, (2) the terrorists would have to decide to communicate about their planned attack through electronic means, (3) the terrorists would have to utilize enhanced encryption techniques resulting from disclosures in *CITIZENFOUR*, (4) the U.S. Government would have to fail to take steps to break those enhanced encryption techniques (of which, by Mr. Edwards' own allegations, it is already aware), (5) the U.S. Government would have to fail to learn of the plot and stop it through the myriad of other intelligence gathering techniques available, (6) the terrorists would have to succeed in executing their plot, and (7) Mr. Edwards would have to

---

[6] Given Mr. Edwards' lack of any actual involvement in the events supposedly giving rise to his claims, it is not surprising the Second Amended Complaint does not specifically identify any allegedly classified information (notwithstanding the fact he and his counsel were provided both a DVD and a 73-page transcript of *CITIZENFOUR* as part of the Documentary Film Defendants' motion to dismiss his First Amended Complaint). *See* SAC. It does not, for example, reference pages in the transcript, or in any other way identify what—if any—information in the documentary (1) remains classified, (2) was not previously disclosed in *The Guardian*, the *Washington Post*, *The New York Times*, or the many other media outlets which reported on Mr. Snowden's disclosures (including the *South China Morning Post*, *see* ECF No. 19-15), and (3) led terrorists to change their encryption techniques.

9

be injured at the location of the attack. As with *Clapper*, such a claimed basis for injury is anything but "certainly impending."

Moreover, Mr. Edwards' allegations of injury from alleged insurance fraud are equally—if not more—speculative, as they require not only that Mr. Edwards be harmed, but that he succeed in showing that the Documentary Film Defendants were liable, and that they could not satisfy any judgment against them notwithstanding the availability of insurance. Courts repeatedly reject such attempts at standing based on similar claims of insurance fraud. *See Campbell v. Gaither,* No. 3:11-CV-190-FDW-DSC, 2011 WL 1838779, at *3 (W.D.N.C. May 13, 2011) ("alleged unemployment insurance fraud victimizes the state of North Carolina and its citizens as a whole, which is insufficient to provide standing"); *Briglia v. Horizon Healthcare Servs., Inc.* No. CIV.A.03-6033NLH, 2007 WL 1959249, at *6 (D.N.J. July 3, 2007) (insurance fraud statute "cannot provide what is otherwise lacking under Article III of the Constitution, i.e., an actual injury").

Mr. Edwards simply cannot establish Article III standing based on his latest alleged "increased risk" (*see* SAC ¶¶ 6-7, 9, 12, 32-33, 41, 43-44, 48, 63, 66, 68-69, 73, 83, 84) of future injury from a terrorist attack or the lack of availability of insurance to cover damages from such a future attack because there is no "certainly impending" risk of those injuries occurring. As such, Mr. Edwards' motion for leave to file his proposed Second Amended Complaint should be denied because the proposed amendments are futile.

### IV. Mr. Edwards Cannot State a Claim Under the Anti-Terrorism Act.

Mr. Edwards should also be denied leave to add claims under the Anti-Terrorism Act, 18 U.S.C. § 2333, *et seq.*, because these claims would need to be dismissed. In the Anti-Terrorism Act, Congress created a private right of action for "[a]ny national of the United States ***injured*** in his or her person, property, or business by reason of an act of

international terrorism." 18 U.S.C. § 2333(a) (emphasis added). However, as explained above, Mr. Edwards has not suffered any injury that meets even the bare minimum requirements under Article III of the Constitution. In enacting the Anti-Terrorism Act, Congress did not create a private cause of action for individuals who face an increased risk of future injury. This is clear from the plain language of the statute. It says "injured," not "may be injured" or "facing an increased risk of injury."[7]

Indeed, every reported case where a court has allowed a private claim under the Anti-Terrorism Act to proceed, the plaintiff has *always* been an actual victim of terrorism, and not a random citizen who merely believed he faced an increased risk of terrorist attack. *See, e.g. U.S. v. Holy Land Found. for Relief & Dev.*, 722 F.3d 677, 681 (5th Cir. 2013) (plaintiffs were "nine American citizens who suffered severe harm as a result of a triple suicide bombing"); *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 165 (2d Cir. 2013) ("Plaintiffs are American, Canadian, and Israeli citizens who were injured, or whose family members were injured or killed, in rocket attacks"); *Boim v. Holy Land Found. for Relief & Dev.*,549 F.3d 685, 687 (7th Cir. 2008) (plaintiffs were parents of American citizen who "was shot to death by two men at a bus stop" by terrorists); *Morris v. Khadr*, 415 F. Supp. 2d 1323, 1326 (D. Utah 2006) (plaintiffs were "soldiers in the United States Army . . . attacked by a band of al Qaeda members in Afghani-

---

[7] Such a reading is also consistent with how the term "injured" has been interpreted in other federal statutes. *See, e.g. Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424, 427–30 (1997) (holding that "injury" under the Federal Employers' Liability Act does not occur merely by exposure to carcinogenic substances, without symptoms developing); *Urie v. Thompson*, 337 U.S. 163, 170 (1949) (holding that for purposes of the Federal Employers' Liability and Boiler Inspection Acts, a person is "injured" only when symptoms of a disease manifest, not by exposure to materials that increase the risk).

stan"). For Mr. Edwards to bring a claim under the Anti-Terrorism Act is, frankly, insulting to those victims of terror whom the statute was meant to compensate.

If Mr. Edwards' supposed "injury" sufficed under the Anti-Terrorism Act then in each of the cases cited above every other American citizen could *also* have sued the defendants because of the "increased risk" created by their conduct. This result is absurd. Even if such an interpretation is not contrary to the plain language of the statute (and it is), "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *In re McGough*, 737 F.3d 1268, 1276 (10th Cir. 2013) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982)). Therefore, Mr. Edwards cannot state any claim under the Anti-Terrorism Act, and leave to amend to add such claims should be denied.

### V. No Allegations Establish a Fiduciary Duty Owed to Mr. Edwards, or Identify a Cause of Action Allowing Mr. Edwards to Sue on Behalf of the United States.

Mr. Edwards' proposed amendment is also futile because he fails to allege any additional facts establishing a fiduciary duty owed to him. As previously explained, Mr. Edwards has no cause of action for breach of a fiduciary duty that is not owed to him. *See* ECF No. 14, at 15–18. While Mr. Edwards' proposed Second Amended Complaint still purports to assert a claim for breach of fiduciary duty owed to him (and for "aiding, abetting, co-conspiring and acting as accessories after the fact" to that breach), he has not added a single factual allegation to support the existence of such a fiduciary duty.

Instead, Mr. Edwards continues to maintain that he "and the American people as a whole" were the "ultimate intended beneficiaries of the secrecy agreements, loyalty agreements, and fiduciary duties arising therefrom by intelligence officials, including defendant Snowden." SAC ¶ 91. This, despite the fact that the only secrecy agreement he

attached to the Second Amended Complaint (and the First Amended Complaint) is explicit that its only beneficiary is "the United States Government." SAC ¶ 62; ECF No. 19-13 (SAC Ex. 11); *see also* ECF No. 14 at 17 n.7.

Finally, Mr. Edwards has not identified any statute that allows him to sue for breach of a fiduciary duty owed to the United States, in a so-called "derivative action." As previously explained, the right to sue on behalf of the United States may only be created by statute. *See* ECF No. 14 at 18–19. Mr. Edwards' proposed amendments do not identify any statute that would allow him to sue on behalf of the United States, and he has dropped any pretense of an effort to bring the United States into the case as an involuntary plaintiff.

Mr. Edwards' proposed amendments fail to cure the deficiencies previously identified in the Documentary Film Defendants' motion to dismiss. Therefore, he has not "demonstrated that the amended facts, claims and added parties undermine or moot the purported defects relied upon by defendants for dismissal." ECF No. 19, at 2. As such, leave to amend should be denied because it is futile.

## VI. Conclusion.

For the foregoing reasons, Mr. Edwards' Motion for Leave to File Second Amended Complaint should be denied, and his First Amended Complaint should also be dismissed with prejudice.

          Respectfully submitted,

          LATHROP & GAGE, LLP

          By: /s/Bernard J. Rhodes
              Bernard J. Rhodes   KS #15716
              2345 Grand Blvd., Suite 2400
              Kansas City, MO  64108
              Tel:   (816) 292-2000
              Fax:   (816) 292-2001
              Email:  brhodes@lathropgage.com

          Attorneys for Defendants Praxis Films, Inc., Laura Poitras, Participant Media LLC, Diane Weyermann, Jeffrey Skoll, and The Weinstein Company LLC

Of Counsel:

Marvin S. Putnam (Cal. Bar No. 212839)
(admitted *pro hac vice*)
Daniel D. Ambar (Cal. Bar No. 278853)
(admitted *pro hac vice*)
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067
Tel:   (310) 246-8480
Fax:   (310) 246-6779
Email:  mputnam@omm.com
       dambar@omm.com

## CERTIFICATE OF SERVICE

  The undersigned certifies that a true and correct copy of the foregoing was served via the Court's ECF System this 2nd day of March, 2015, on the following:

  Jean Lamfers
  Lamfers & Associates, L.C.
  7003 Martindale
  Shawnee, KS  66218

                /s/Bernard J. Rhodes
                Attorney for Defendants Praxis Films, Inc., Laura Poitras, Participant Media, LLC, Diane Weyermann, Jeffrey Skoll, and The Weinstein Company LLC